US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### FORT SMITH DIVISION

AUG 0 8 2018

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:18CR20010-006 |
| | ) | |
| AMBER DAAWN BOURSH | ) | |
| a/k/a Amber Dawn Hinds | ) | |

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this Agreement. The agreement of the parties is as follows:

### COUNT OF CONVICTION AND COUNTS OF DISMISSAL

1.      The Defendant, AMBER DAAWN BOURSH, hereby agrees to plead guilty to count One of the Indictment charging the Defendant with Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. If the Court accepts this Plea Agreement, once the Court has pronounced sentence, the United States will move to dismiss Counts Eleven and Twelve of the Indictment.

### ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

2.      The Defendant has fully discussed with defense counsel the facts of this case and the elements of the crime to which the Defendant is pleading guilty. The Defendant has committed each of the elements of the crime to which the Defendant is pleading guilty, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

a.      Beginning as early as February 2015, law enforcement in Fort Smith, Arkansas, learned that Brian Christopher Jones, Deborah Nabors and other members of a large drug

trafficking organization were involved in the importation and distribution of methamphetamine in Sebastian and Crawford Counties in Arkansas.

b.      In early 2017, investigators conducted separate controlled purchases of methamphetamine from Deborah Nabors utilizing confidential informants and undercover officers.

c.      On May 4, 2017, District Court Chief Judge P.K. Holmes, III, signed an Order authorizing the interception of wire and electronic communications to and from a cell phone used by Deborah Nabors. During these wire and electronic interceptions, over 10 associates involved in the distribution of methamphetamine with Deborah Nabors were identified. One of the associates identified was the Defendant in this case, AMBER DAAWN BOURSH.

d.      Special Agents from the DEA intercepted several communications between the Defendant in this case, AMBER DAAWN BOURSH and Deborah Nabors that were relevant to the investigation of the drug trafficking organization.  In some of the phone calls and text messages that agents intercepted between AMBER DAAWN BOURSH and Deborah Nabors, AMBER DAAWN BOURSH and Deborah Nabors discussed obtaining methamphetamine for distribution.

e.      In an intercepted phone call between AMBER DAAWN BOURSH and Deborah Nabors on May 26, 2017, AMBER DAAWN BOURSH told Deborah Nabors that AMBER DAAWN BOURSH was meeting with Dylan Dempsey. Deborah Nabors asked why AMBER DAAWN BOURSH was meeting Dylan Dempsey and AMBER DAAWN BOURSH confirmed it was to obtain methamphetamine. AMBER DAAWN BOURSH offered to take Deborah Nabors to meet with Dylan Dempsey.

f.      In an intercepted phone call between AMBER DAAWN BOURSH and Deborah

Nabors on June 2, 2017, Deborah Nabors asked AMBER DAAWN BOURSH to take Deborah

Nabors to make a delivery of methamphetamine. AMBER DAAWN BOURSH asked Deborah

Nabors who the customer was, the amount of methamphetamine being delivered and the price.

g.      AMBER DAAWN BOURSH was interviewed by DEA Task Force Officer

Anthony Sacco on June 13, 2018, at the Sebastian County Sheriff's Department in Fort Smith.

After advisement of her Miranda warning, AMNER DAAWN BOURSH stated that she and

Deborah Nabors met a man, later identified as Jimmy Franklin Fore, in Fort Smith so that Deborah

Nabors could distribute methamphetamine to Jimmy Franklin Fore. AMBER DAAWN BOURSH

told DEA Task Force Officer Anthony Sacco that she understood when she accompanied Deborah

Nabors to meet the man (Jimmy Franklin Fore), that it was for the purpose of Deborah Nabors to

sell him methamphetamine.

h.      Based on the nature of the investigation, the intercepted phone calls, the

surveillance conducted by the DEA agents in this case, and the statements of cooperating co-

Defendants, the Government could prove that the Defendant in this case, AMBER DAAWN

BOURSH, conspired with Deborah Nabors and others to distribute methamphetamine, a Schedule

II controlled substance, in the Western District of Arkansas.

## ADVICE OF RIGHTS

3.      The Defendant hereby acknowledges that she has been advised of and fully

understands the following constitutional and statutory rights:

a.   to have an attorney and if the Defendant cannot afford an attorney, to have
     one provided to her and paid for at the United States' expense;
b.   to persist in her plea of not guilty;
c.   to have a speedy and public trial by jury;
d.   to be presumed innocent until proven guilty beyond a reasonable doubt;
e.   to confront and examine witnesses who testify against her;
f.   to call witnesses on her behalf;
g.   to choose to testify or not testify and that no one could force the Defendant

to testify; and,

h.      to have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

4.      The Defendant hereby acknowledges that she understands with respect to the one count to which she pleads guilty, she thereby WAIVES all of the rights listed as (b) through (h) of the above paragraph.

## WAIVER OF ACCESS TO RECORDS

5.      The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

## WAIVER OF "HYDE" CLAIM

6.      The Defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## EFFECTS OF BREACH OF THIS AGREEMENT BY DEFENDANT

7.      The Defendant agrees that if after signing this Plea Agreement, the Defendant commits any crimes, violates any conditions of release, or fails to appear for sentencing, or if the Defendant provides information to the Probation Office or the Court that is intentionally misleading, intentionally incomplete, or intentionally untruthful, or if the Defendant violates any term of this Plea Agreement, takes a position at sentencing which is contrary to the terms of this Plea Agreement or attempts to withdraw from this Plea Agreement, this shall constitute a breach of this Plea Agreement which shall release the United States from any and all restrictions or

obligations placed upon it under the terms of this Plea Agreement and the United States shall be free to reinstate dismissed charges or pursue additional charges against the Defendant. The Defendant shall, however, remain bound by the terms of the Plea Agreement, and will not be allowed to withdraw this plea of guilty unless permitted to do so by the Court.

8.      The Defendant further agrees that a breach of any provisions of this Plea Agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence and the United States shall be allowed to use and to introduce into evidence any one or more of the following:

a.      admissions against interest, both oral and written, made by the Defendant to any person;
b.      statements made by the Defendant during her change of plea hearing;
c.      the factual basis set forth in the Plea Agreement;
d.      any testimony given under oath in these proceedings or to a grand jury or a petit jury;
e.      any and all physical evidence of any kind which the Defendant has provided to the United States; and,
f.      any and all information provided by the Defendant to the United States' attorneys, or to federal, state, county, and/or local law enforcement officers.

## MAXIMUM PENALTIES

9.      The Defendant hereby acknowledges that she has been advised of the maximum penalty for the one count to which she is pleading guilty.  By entering a plea of guilty to Count One of the Indictment, the Defendant agrees that she faces:

a.      a maximum term of imprisonment for 20 years;
b.      a maximum fine of $1,000,000;
c.      both imprisonment and fine;
d.      a term of supervised release which begins after release from prison;
e.      a possibility of going back to prison if the Defendant violates the conditions of supervised release; and
f.      a special assessment of $100.00.

## CONDITIONS OF SUPERVISED RELEASE

10.     The Defendant acknowledges that if a term of supervised release is imposed as part

of the sentence, the Defendant will be subject to the standard conditions of supervised release as

recommended by the United States Sentencing Commission and may be subject to other special

conditions of supervised release as determined by the Court.   The standard conditions of

supervised release are as follows:

a.  The Defendant shall report to the probation office in the federal judicial district where she is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the Defendant to report to a different probation office or within a different timeframe.

b.  After initially reporting to the probation office, the Defendant will receive instructions from the Court or the probation officer about how and when to report to the probation officer, and the Defendant shall report to the probation officer as instructed.

c.  The Defendant shall not knowingly leave the federal judicial district where she is authorized to reside without first getting permission from the Court or the probation officer.

d.  The Defendant shall answer truthfully the questions asked by the probation officer.

e.  The Defendant shall live at a place approved by the probation officer. If the Defendant plans to change where she lives or anything about her living arrangements (such as the people the Defendant lives with), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

f.  The Defendant shall allow the probation officer to visit the Defendant at any time at her home or elsewhere, and the Defendant shall permit the probation officer to take any items prohibited by the conditions of the Defendant's supervision that she observes in plain view.

g.  The Defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the Defendant from doing so. If the Defendant does not have full-time employment, she shall try to find full-time employment, unless the probation officer excuses the Defendant from doing so. If the Defendant plans to change where the Defendant works or anything about her work (such as the position or the job responsibilities), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

h.  The Defendant shall not communicate or interact with someone the Defendant knows is engaged in criminal activity. If the Defendant knows someone has been convicted of a felony, the Defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.

i.  If the Defendant is arrested or questioned by a law enforcement officer, the

Defendant shall notify the probation officer within 72 hours.

j.  The Defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or Tasers).

k.  The Defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

l.  If the probation officer determines the Defendant poses a risk to another person (including an organization), the probation officer may require the Defendant to notify the person about the risk and the Defendant shall comply with that instruction. The probation officer may contact the person and confirm that the Defendant has notified the person about the risk.

m.  The Defendant shall follow the instructions of the probation officer related to the conditions of supervision.

## COOPERATION WITH THE UNITED STATES

11.     The Defendant agrees to fully, voluntarily and truthfully cooperate with the United States and disclose all information, which the Defendant possesses relating to the activities set forth in the Indictment and all other information concerning any criminal activity that is the subject of investigation by any law enforcement agency.  The Defendant's obligation of truthful and unreserved disclosure includes any obligation to provide upon request any documents, records or other tangible evidence within the Defendant's control.  The Defendant agrees to testify before the grand jury and/or at any trial as requested by the United States.

12.     The United States agrees to advise the Probation Office and the Court of the extent and nature of the Defendant's cooperation.  The Defendant's agreement to cooperate with the United States is made pursuant to U.S.S.G. §§ 1B1.8(a) & (b).  If the Defendant provides full, complete, truthful, and substantial cooperation to the United States, the United States reserving the right to make the decision on the nature and extent of the Defendant's cooperation, then the United States agrees to consider moving for a downward departure under U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Rule 35 of the Federal Rules of Criminal Procedure.  Both parties acknowledge that

the District Court has the power to deny a motion for downward departure. The Defendant hereby

agrees that the United States does not promise, by the terms of this agreement, to file a Section

5K1.1, 18 U.S.C. § 3553(e) or Rule 35 motion.

## NO OTHER CHARGES

13.    The United States agrees that no other federal charges, which stem from the

activities described in the Indictment, will be brought against the Defendant in the Western District

of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

14.    The parties acknowledge that the Court shall consult and take into account the

United States Sentencing Commission Guidelines in determining the sentence, but that the Court

is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory

range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

15.    The Defendant acknowledges that discussions have taken place concerning the

possible guideline range, which might be applicable to this case.  The Defendant agrees that any

discussions merely attempt to guess at what appears to be the correct guideline range and do not

bind the District Court.  Further, the Defendant acknowledges that the actual range may be greater

than contemplated by the parties.  In the event that the actual guideline range is greater than the

parties expected, the Defendant agrees that this does not give her the right to withdraw her plea of

guilty.

## RELEVANT CONDUCT CONSIDERED

16.    At the sentencing hearing, the United States will be permitted to bring to the Court's

attention, and the Court will be permitted to consider, all relevant information with respect to the

Defendant's background, character and conduct, including the conduct that is the subject of this investigation for which she has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this Agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

17.     In the event that it is determined that the Defendant has not been truthful with the Court as to any statements made while under oath, this Plea Agreement shall not be construed to protect the Defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE UNITED STATES

18.     The United States agrees not to object to a recommendation by the Probation Office or a ruling of the Court that awards the Defendant an appropriate-level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater and the Court accepts a recommendation in the Presentence Report that the Defendant receive two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points. However, the United States will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if the Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following  a) falsely denies, or makes a statement materially inconsistent with, the factual basis set forth in this Agreement, b) falsely denies additional relevant conduct in the offense, c) is untruthful with the United States, the Court or probation officer, or d) materially breaches this Plea Agreement in any way.

## UNITED STATES' RESERVATION OF RIGHTS

19.     Although the United States agrees not to object to certain findings by the Probation

Office or to rulings of the Court, it reserves the right to:

     a.     make all facts known to the Probation Office and to the Court;

     b.     call witnesses and introduce evidence in support of the Presentence Report;

     c.     contest and appeal any finding of fact or application of the Sentencing Guidelines;

     d.     contest and appeal any departure from the appropriate Guideline range; and,

     e.     defend all rulings of the District Court on appeal including those rulings which may be contrary to recommendations made or positions taken by the United States in this Plea Agreement which are favorable to the Defendant.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

20.     The United States' concessions on sentencing options are non-binding and made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure.   As a result, if the Court should reject the Defendant's requests or recommendations for certain findings of fact or applications of the Guidelines, the Defendant acknowledges that there is no right to withdraw the guilty plea.

## DISMISSAL OF COUNTS ELEVEN AND TWELVE

21.     The United States' agreement to dismiss certain counts of the Indictment is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.   As a result, if the Court should reject the United States' motion to dismiss Counts Eleven and Twelve of the Indictment, the Defendant shall be afforded the right to withdraw her plea pursuant to Rule 11(c)(5)(B) of the Federal Rules of Criminal Procedure.

## AGREEMENT NOT BINDING ON THE COURT

22.     The parties agree that nothing in this Agreement binds the District Court to:

     a.     make any specific finding of fact;

     b.     make any particular application of the Sentencing Guidelines;

     c.     hand down any specific sentence;

     d.     accept any stipulation of the parties as contained in this Plea Agreement; and,

     e.     accept this Plea Agreement.

23.     The United States and the Defendant acknowledge that the Court has an obligation

to review the Presentence Report before it accepts or rejects this Plea Agreement.

## AGREEMENT DOES NOT BIND ANY OTHER ENTITY

24.     The parties agree that this Plea Agreement does not bind any governmental entity

other than the United States Attorney's Office for the Western District of Arkansas.

## SPECIAL ASSESSMENT

25.     The Defendant agrees to pay $100 as the special assessment in this case.

## REPRESENTATIONS BY DEFENDANT

26.     By signing this Plea Agreement, the Defendant acknowledges that:

a.      The Defendant has read this Agreement (or has had this Agreement read to her) and has carefully reviewed every part of it with defense counsel.

b.      The Defendant fully understands this Plea Agreement and is not under the influence of anything that could impede the Defendant's ability to fully understand this Plea Agreement.

c.      No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement.

d.      The Defendant is satisfied with the legal services provided by defense counsel in connection with this Plea Agreement and matters related to it.

e.      The Defendant has entered into this Plea Agreement freely, voluntarily, and without reservation and the Defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant.

## REPRESENTATIONS BY DEFENSE COUNSEL

27.     By signing this Plea Agreement, counsel for the Defendant acknowledges that:

a.      Counsel has carefully reviewed every part of this Agreement with the Defendant and this Agreement accurately and completely sets forth the entire agreement between the United States and the Defendant.

b.      Counsel has explained the ramifications of the Plea Agreement to the Defendant, and believes that the Defendant understands this Plea Agreement, what rights are being lost by pleading guilty, and what the United States has agreed to do in exchange for the plea of guilty.

c.      Counsel believes that the Defendant's decision to enter into this Agreement is an informed and voluntary one.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

28.     The Defendant and her attorney both acknowledge that this Plea Agreement constitutes the entire agreement of the parties.  Further, all parties agree that there are no oral agreements or promises which have been made to induce the Defendant to change her plea to guilty.

Dated this ___*30th*___ day of ___*July*___, 2018.

DUANE (DAK) KEES
UNITED STATES ATTORNEY

Amber Daawn Boursh
Defendant

By:

Robert Marquette
Attorney for Defendant

Kyra E. Jenner
Assistant U.S. Attorney